## In the Matter of the Discipline of Merlin VOORHEES, Attorney at Law.

### No. 12544.

Supreme Court of South Dakota.

Argued Nov. 15, 1979.

Decided July 9, 1980.

Rehearing Denied Aug. 19, 1980.

1. The reference in the dissent to a community feedlot appears to be a misnomer. Although locally owned, the feedlot was an organization entered into for profit.

2. 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. SDCL 16–19–36 provides, in pertinent part:
   The clerk of any court in this state in which an attorney is convicted of a serious crime shall within ten days of said conviction transmit a certificate thereof to the Supreme Court. The term "serious crime" shall include any felony . . . . .

R. James Zieser, Tyndall, Atty. for Disciplinary Bd., South Dakota Bar Ass'n, for complainant.

Patrick J. Kane of Kean & Kane, Sioux Falls, for respondent.

MORGAN, Justice.

Merlin Voorhees was admitted to practice before the Bar of this state on July 31, 1969. He practiced law in Onida, South Dakota, until 1972 or 1973 when he sold out his practice and took over the management of a feedlot situated in Onida and denominated the Missouri Slopes Feedlot Inc. (MSF), of which he was one of the initial investors.[1] He was thus engaged when he committed the offense of making and using false documents to obtain excessive payments under a federal drought relief program. He was indicted on three counts under 18 U.S.C. § 1001;[2] convicted on one and acquitted on two. Such a violation constitutes a felony under federal law, which is defined as a serious crime for disciplinary purposes under SDCL 16–19–36.[3]

Upon notification of the conviction this court, pursuant to SDCL 16–19–37[4] and SDCL 16–19–39,[5] respectively, suspended Voorhees' license to practice and referred

4. SDCL 16–19–37 provides, in pertinent part:
   If any attorney has been convicted of a serious crime as defined in § 16–19–36, the Supreme Court shall enter an order immediately suspending the attorney, whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such conviction.

5. SDCL 16–19–39 provides:
   Upon the receipt of a certificate of conviction of an attorney for a serious crime, the Supreme Court shall, in addition to suspending him in accordance with the provisions of § 16–19–37, also refer the matter to the board or the attorney general for the institution of a formal proceeding in which the sole issue to be determined shall be the extent of the final discipline to be imposed, provided that a disciplinary proceeding so instituted will not be brought to hearing until all appeals from the conviction are concluded.

the matter to the Disciplinary Board for formal proceedings. After the Disciplinary Board filed its findings and recommendation and Voorhees filed his answer through counsel and exhausted his appellate remedies, the matter was brought on for argument before this court. Under the provisions of SDCL 16–19–39 the sole issue to be determined is the extent of the final discipline to be imposed.[6]

The range of discipline authorized by SDCL 16–19–35 goes from public censure, to probationary status, to suspension for a period no longer than three years, to disbarment. The Disciplinary Board has recommended disbarment.

We first examine the factual background of the charge on which Voorhees was convicted. The feedlot which Voorhees left his law practice to manage was a large operation where cattlemen could board and feed out cattle. The feedlot had a capacity of 17,000 to 18,000 head and employed thirteen to twenty-two people.

When the severe drought of 1975–76 hit the area, the Federal Government, through the Agricultural Stabilization Conservation Service (ASCS), set up a hay transportation assistance program commencing on June 17, 1976. The program provided payment to farmers to facilitate the bringing of roughage to South Dakota. Under the program a farmer was paid considerably more for hauling by means of his own or a leased vehicle rather than by commercial hauler at set rates. A December 1976 ASCS ruling required that in order to qualify for the higher payments for a leased vehicle the lease must provide that the farmer-lessee must assume some risk such as employment of drivers, insurance, gas, oil, or maintenance.

In November 1976 Voorhees, as manager of MSF, entered into a lease agreement with a trucker who was a regular commercial hauler on a regular set payment per mile basis. He admitted that after the December 1976 ASCS rule he forged a revision of the lease that would make MSF

eligible for the higher payments which he then filed with the ASCS. The trucker denied ever seeing or signing the lease in question.

The response to the Disciplinary Board's report, filed by Voorhees' attorney, was in great part an attack upon the government's farm programs, as though the ill-conceived nature of a program to get money to farmers in depression or drought or in election years was some excuse for bilking the government. Counsel suggests that Voorhees was guilty more of naivete, stupidity and lack of perception than dishonesty. The fact is that the jury found him guilty of willfully, knowingly, and unlawfully making and using, and aiding, abetting, counseling, inducing and procuring the making and use of a false writing and document knowing the same to contain materially false, fictitious, and fraudulent statements.

We are guided by the repeated holdings of this court that "[t]he purpose of disciplinary proceedings is not to punish but to remove from the profession those attorneys whose misconduct has proved them unfit to be entrusted with duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrongdoing." *In Matter of Walker*, 254 N.W.2d 452, 455 (S.D.1977); *In re Weisensee*, 88 S.D. 544, 224 N.W.2d 830 (1975); *In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974).

As we said in the *Matter of Parker*, 269 N.W.2d 779, 780 (S.D.1978):

As officers of this court, attorneys are charged with the obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect

---

**6.** See Note 5, supra.

for the law must be more than a platitude. . . .

. . . To determine whether discipline other than disbarment would be appropriate, the circumstances surrounding the conviction will be considered, i. e., whether the conduct involved dishonesty, fraud, deceit, or misrepresentation; . . whether the conduct adversely reflects upon the attorney's integrity, competency, or fitness to practice law.

There can be no question that the making and use of a forged document to obtain greater cash benefits reeks of dishonesty, fraud, deceit, and misrepresentation. Furthermore, the preparation and filing of documents falls in an area so akin to law practice that it casts grave doubt on the perpetrator's competency or fitness to practice law. In an age where the legal profession is under heavy attack we must have regard for the image of the profession as a whole. A slap on the wrist for the clearly felonious handling of a business act which is cognitive of many acts that a practicing attorney has to perform daily would not lend credibility to the high ethical standards of the profession. Nor can it be suggested that the fact that Voorhees was acting in a purely commercial capacity rather than as a practicing attorney when he perpetrated the offense in any manner lessens the need for grave discipline, for that would be the same as saying that if you cannot make a dishonest buck in the commercial world try the legal profession.

We adopt the recommendation of the Disciplinary Board and determine that a judgment shall forthwith be entered disbarring Merlin Voorhees, revoking his license to practice, and striking his name from the Clerk's roll of attorneys.

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent.

"Although most states make a felony conviction grounds for automatic disbarment, our rule does not mandate disbarment; however, such a conviction is prima facie evidence of an unfitness for the trust and confidence reposed in members of the Bar of this state." *Matter of Parker*, 269 N.W.2d 779, 780 (S.D.1978). "Prima facie" is of Latin derivation meaning: "At first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." Black's Law Dictionary 1353 (4th ed. 1968).

Inasmuch as this state has not adopted, either by rule or by statute, the concept that conviction of a felony results in automatic disbarment, we owe a responsibility to look beyond the prima facie case to determine this attorney's fitness to practice law. I choose to do so out of respect to this young lawyer and to his family, his wife and five small children. I further embark upon such a course out of respect to former opinions of this Court. The power to admit and disbar is "not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court as the rights and dignity of the court itself." *In re Egan*, 24 S.D. 301, 303, 123 N.W. 478, 479 (1909).

I am not suggesting for one moment that the majority opinion has treated this attorney in a despotic manner or with passion, prejudice, or personal hostility. I am asserting that this Court, in this disbarment proceeding or any in the future, must begin its insight at the prima facie showing, that is the felony conviction, and probe deeply thereafter into the attorney's character and fitness to practice law. The heart of my dissent is that in this case the Court has punished this attorney for conviction of a felony by taking his license to practice law from him, and that the judgment of this Court is too harsh considering the facts and circumstances of the case. An attorney

should be disbarred only "when it seems clear that the protection of society requires such action, or when the maintenance of the respect due courts and judges or of the respectability of the legal profession itself demands such action." *In re Wilmarth*, 42 S.D. 76, 87, 172 N.W. 921, 924 (1919). 7 Am.Jur.2d Attorneys at Law § 18 (1963) states:

Discipline of an attorney may be effected by disbarment, suspension, or censure, sometimes called reprimand, which may be public or private. Disbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. To disbar it should be clear that he is one who should never be at the bar; otherwise suspension is preferable.

I take the position that it would be preferable to suspend Merlin Voorhees from the practice of law for a period of two years and require attendance at continuing legal education schools and seminars. The Disciplinary Board of the State Bar has recommended disbarment. Great weight should be given to the recommendation of the Disciplinary Board by this Court. The lawyers that serve on this Board have a most arduous and difficult calling. We must be mindful of the fact that while the Disciplinary Board makes recommendations, the awesome responsibility of making the final decision rests with this Court, not the Disciplinary Board. SDCL 16–19–22 provides:

The Supreme Court shall have sole power to strike from the roll the name of any attorney and counselor at law and to revoke his license or to suspend him from the practice for such time as shall seem just for cause shown.

In this profession, we should all remember that the Justices of this Court are elected from districts all over the state, by people reposing faith in the independent judgment of those individuals whom they place on the highest court of this state. The Disciplinary Board is chosen from within the framework of the State Bar, a lawyers'

organization. Thus, I am obliged to exercise independent judgment; however, I also must place great weight on the recommendation of devoted men who likewise exercise independent judgment.

From the time we are fledgling law students, we are taught that each case should be decided upon its own particular set of facts; and so I believe that this case should be likewise judged. Merlin Voorhees is a very unique individual with certain God-given talents who has committed a felony and stands now, before the Bar of Justice, with his right to practice law on the line. We must always remember that the purpose of a disciplinary proceeding is not for punishment. Rather, it is to remove from the profession those attorneys whose misconduct has proved them unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney so that the public may be protected from their further wrongdoing. *In Re Kunkle*, 88 S.D. 269, 218 N.W.2d 521 (1974), cert. den. 419 U.S. 1036, 95 S.Ct. 521, 42 L.Ed.2d 312 (1974). Therefore, we face this question: Is Merlin Voorhees unfit to be entrusted with the duties and responsibilities of an attorney? We are not postured to legally punish Merlin Voorhees. As was stated in *In Re Weisensee*, 88 S.D. 544, 546, 224 N.W.2d 830, 831 (1975): "[T]he real and vital issue to be determined in disbarment proceedings is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law."

Attorney Voorhees, not as an attorney, but as a manager of a community feedlot corporation, altered a lease at a time when he and the community feedlot corporation were undergoing great hardship, distress, and economic problems resulting from a severe drouth in South Dakota. His act was designed, at the expense of the United States taxpayers and government, to benefit this community feedlot. When confronted by investigators from the United States Department of Agriculture, Voorhees admitted to his actions. A federal grand jury returned a true bill on three counts of using false documents to defraud

the United States. A federal trial ensued and Voorhees was acquitted on two counts and found guilty on one count. District Court Judge Andrew Bogue sentenced Voorhees to two years' imprisonment and imposed a fine of $2,500. The federal judge suspended execution of the imprisonment, however, and placed Voorhees on probation for a period of two and one-half years with the usual conditions of paying the fine and obeying the rules of probation and laws of the jurisdiction. Voorhees' federal probation officer submitted a sworn affidavit to this Court, a highlight of which is this statement: "I was impressed by the probationer's dedication in looking after his responsibilities. I have felt that the probationer has been open and honest in keeping me informed of his present circumstances and future plans. Because of his commitments, his openness and what I have come to believe an honest intent, I have developed much respect for the individual."

On July 17, 1978, attorney Voorhees was suspended from the practice of law in all courts of South Dakota "pending final disposition of a disciplinary proceeding." From that date until the rendition of this opinion, he has not practiced law and has kept his family together at Onida, South Dakota, driving a tractor for wages and purchasing some cattle for a small ranching operation. He has worked hard during his suspension and has been a credit to himself and his family. There is no suggestion or showing that he has been anything other than an upright man.

Earlier, I described Merlin Voorhees as a unique man. There are many approaches to life with a law degree in hand. This attorney did not use his profession for monetary gain. Rather, he used it as a means for serving the community in which he lived. I am reminded, at this juncture of my dissent, of the words of Oliver Wendell Holmes in referring to this profession: "We are not mere grubbers in the muckheaps of the world." A well-furnished office in a stately building in a large city was neither Voorhees' cup of tea nor his calling in life. His cause did not seem to be the creation of a flourishing, high-income producing law practice; he appeared to be more interested, if not almost totally dedicated, to improving the small, agricultural town of Onida, South Dakota. To this end, he was most instrumental in bringing a doctor and dentist to Onida. In a Herculean effort, he personally went about refacing and restructuring old buildings on the main street of Onida; he served on the city council; he was active in Cub Scouts, church, Chamber of Commerce, Sully Buttes School District Education Advisory Board; and was a general promoter for the community.

Springing from this disbarment proceeding has been an overwhelming outpouring of support from his community, in the form of written affidavits, that bears directly on his fitness to practice law. This showing comes from people of all walks of life in the general community of Onida and Sully County. The Disciplinary Board has not presented one scintilla of evidence, outside of this one conviction, that suggests he is unfit to practice law. This Court is presented with characterizations as follows: "good and honest;" "very positive, constructive;" "Merlin is a good man;" "honest trustworthy;" "an asset, leader, community minded;" "honest, interested, caring;" "he was dedicated to make his community grow;" "upright and very progressive and a builder, not a destroyer;" "very competent—knew his law—willing to help any way he could;" "one of the best assets we had in the community;" "trying to get new business into town;" "he has been tops;" "he served [on the city council] with dignity and a sincere dedication to help his community." The praises for him as a good and decent man go on ad infinitum.

Adversity, such as a severe drouth in an agricultural community, often drives good men into doing bad things. In his zeal to help a community feedlot, hard hit by a shortage of hay and grain, Voorhees altered a lease document without a trucker's permission. Realizing this community feedlot was in jeopardy, and trying to avert a financial calamity, Voorhees not only used bad judgment but also committed a crime. I do not condone his crime. With tears in

his eyes, before the highest Court of this state, he said: "I was wrong on the lease—very wrong—I will pay all of my life. I'll go back for continuing education; I will need it. I have five little children and a wife depending on me; please do not disbar me."

Attorney Voorhees' attitude toward his wrongdoing has been one of reparation, sorrow, regret, humility, hard work, and contriteness of spirit. He has embarrassed his family, profession, and community. Indeed, he has already paid a very dear price for his criminal act. Voorhees, by the majority of this court is being disbarred; censorious and belabored utterances are not pertinent nor necessary. His mental and moral strengths, by an overwhelming proof in this case, indicate he is fit to practice law and that society will not be endangered by permitting him to practice law. Adjectives of the culpability of his crime do not address the arguments of this dissent. The majority opinion is simply grounded in punishment.

The Disciplinary Board has not controverted the evidence of Attorney Voorhees concerning his fitness to practice law. It has rested its case merely on the conviction. It has, in essence, totally stopped at the very point that it should have begun. The prima facie case against Voorhees exists, it is true, but the record is overwhelming that notwithstanding this presumption, he is fit to practice law and should not be permanently disbarred. If we are to give meaning to the spirit of our past decisions, we must heed showings, affidavits, testimony, and all facts that bear on the fitness of an attorney's right to practice law. Otherwise, a conviction per se shall bring about automatic disbarment, which is not the law of this state. A presumption is just that: It is like a night bird, that flits about in the twilight and into the dark, but disappears under the light and sunshine of actual facts. The sunshine of the facts probe and reveal more than a presumption of law; we must never lose sight of this.

Finally, the majority leans heavily on the matter of Voorhees' conviction on *falsifying documents* (emphasis supplied) as justification of disbarment. Procuring a false affidavit in a divorce case was not grounds for disbarment but was grounds for suspension in the case of *In re Wall*, 73 S.D. 176, 39 N.W.2d 903 (1949). Causing his client to make a false attachment affidavit was not grounds for cancellation of an attorney's license to practice law in *In re Egan*, 37 S.D. 159, 157 N.W. 310 (1916). In both of these cited cases the attorneys were acting as attorneys. Both attorneys were charged with *falsifying documents* (emphasis supplied). Voorhees was acting in his capacity as a corporate officer and not in the context of an attorney. Although this is not a determinative factor, it is a critical factor to be considered. I point this out not to condone Voorhees' conduct but to permit the academe of the Bar to compare these two cases with this case and to consider thoughtfully the precedent of this court.