In the Matter of the Petition for **REINSTATEMENT OF David M. HUSBY as an Attorney at Law.**

No. 15950.

Supreme Court of South Dakota, Original Proceeding.

Argued April 25, 1988.

Decided July 20, 1988.

Deming Smith of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for respondent.

R. James Zieser, Tyndall, for Disciplinary Bd. for the State Bar of South Dakota.

MILLER, Justice.

On June 29, 1984, this court entered an order suspending petitioner, David M. Husby, from practicing law in the courts of this state for a period of three years from and after March 26, 1984.[1] In entering such suspension order, this court unanimously adopted the recommendation of the Disciplinary Board of the State Bar of the State of South Dakota. This court had referred the matter to the Disciplinary Board for its recommendation after learning that petitioner had pleaded guilty to the offense of unauthorized possession of a controlled substance, a felony and "serious crime" within the definition of SDCL 16–19–36.[2]

On August 31, 1987, petitioner, pursuant to SDCL 16–19–84, submitted a petition for reinstatement with the Disciplinary Board. The Disciplinary Board conducted a formal hearing and received various evidence in the form of testimony and affidavits. The Disciplinary Board found that petitioner, since his conviction, had "led an exemplary life" and that he had demonstrated "by clear and convincing evidence that he has the moral qualifications for admission to practice in this State." The Disciplinary Board further found that petitioner had demonstrated, "by clear and convincing proof that he has the competency and learning of law required for admission to practice law in this State and that it will not be necessary that he submit to an examination for additional proof thereof."

Under SDCL 16–19–84, a disbarred or suspended attorney has:

... the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of the justice, or subversive of the public interest.

It is well settled that we are not bound by and need not follow the recommendations of the Disciplinary Board, but such recommendations are entitled to careful consideration. *In re Hopp*, 376 N.W.2d 816 (S.D.1985); *In re Willis*, 371 N.W.2d 794 (S.D.1985); *In re Rensch*, 333 N.W.2d 713 (S.D.1983); *In re Kunkle*, 88 S.D. 269, 218 N.W.2d 521 (1974), *cert. denied* 419 U.S. 1036, 95 S.Ct. 521, 42 L.Ed.2d 312 (1974). *See generally In re Chamley*, 349 N.W.2d 56 (S.D.1984).

We certainly do not minimize the seriousness of petitioner's conduct prior to the time of his suspension. Arguably, this court was too lenient in adopting the prior recommendation of the Disciplinary Board that he be suspended for only a period of three years, rather than a more severe sanction.[3] However, that issue is not a proper consideration at this time.

We agree with and adopt the findings and recommendation of the Disciplinary Board and conclude that petitioner has met

---

1. This court had entered a temporary suspension order on March 26, 1984, pending proceedings before the Disciplinary Board.

2. Petitioner was never adjudicated guilty of this offense. Rather, he received a suspension of imposition of sentence under SDCL 23A–27–13 and complied with the conditions of probation. *See* SDCL 23A–27–17.

3. This Justice was not a member of the court at that time. Justice Henderson did participate and voted for the three-year suspension.

his burden of demonstrating his fitness to practice law.

Having graduated from the University of South Dakota Law School in 1980 under the "diploma privilege," petitioner has never taken a bar examination. Although we would prefer to have his legal competence further demonstrated by a successful passing of the bar examination (see *Matter of Voorhees*, 403 N.W.2d 738 (S.D.1987)), we cannot do so. Under SDCL 16–19–87, that requirement may only be imposed upon those who have been suspended for a period of more than five years.

Judgment will be entered reinstating petitioner to the practice of law. Reinstatement will be conditioned upon his payment of all of the costs of the proceedings involved in his suspension and reinstatement, and upon payment of his membership fees to the South Dakota State Bar as follows: the fee for an inactive member for the years 1985, 1986 and 1987, and the fee for an active member for the full year 1988.

MORGAN, J., and TAPKEN and MILLER, Circuit Judges, concur.

HENDERSON, J., dissents.

JAY H. TAPKEN, Circuit Judge, sitting for WUEST, C.J., disqualified.

RONALD K. MILLER, Circuit Judge, sitting for SABERS, J., disqualified.

HENDERSON, Justice (dissenting).

I respectfully dissent.

Husby should not be reinstated to the Bar of the State of South Dakota under the provisions of SDCL §§ 16–19–84 through 16–19–87. He has never taken a bar examination in this state or any other state nor has he passed any national academic test. Particularly alarming is that he has never been called upon to display his knowledge of Legal Ethics. Surely, he should be administered an essay examination to determine if he can pass the Rules of Professional Conduct set forth in SDCL 16–18, Appx. (formerly the Code of Professional Responsibility). An adjunct to this Court is the Board of Bar Examiners (SDCL 16–16– 3; SDCL 16–16–5). It provides the ready machinery to now test Husby.

"A court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer." *In re Petition of Morrison*, 45 S.D. 123, 126, 186 N.W. 556, 557 (1922).

Although Husby personally told this Court at a hearing that he had no plans to "hang up a shingle," reinstating him permits him to practice law or "hang up a shingle." This argument is artful, but not meaningful. The reason that it is not meaningful, is that once he is licensed to practice law, he can practice law in any given field. I quote from the Disciplinary Board Hearing on September 10, 1987, at page 35: "One of the things I genuinely enjoy is being in a courtroom, whether it be small claims case, which has been alluded to here, where you make an argument as a lay person, or whether it would involve something else in Circuit Court in a civil matter." Also, on page 34 thereof, he states: "I am particularly interested in being able to practice what was my chosen profession in furthering the objectives and plans of the organization in which I am currently engaged. I don't dismiss the fact that I would like to practice law again." Husby states in his Petition for Reinstatement that he has kept current with the law while suspended from the practice as reflected by seven affidavits on file. These do not pertain to classroom or formal educational pursuit. His only academic effort, insofar as educational training, is his attendance at one continuing legal education seminar on debtor-creditor relationships, per his personal statements at the formal hearing before this Court. Therefore, I am not convinced that he has "kept current with the law."

Facts underlying Husby's suspension are as follows (as nothing beyond the bare fact of his conviction on possession appears in the suspension, this is based on his state-

ments before the Disciplinary Board on September 10, 1987):

(1) 1981—Husby's admission to the State Bar, via "diploma privilege" (no bar examination); and employment as a public defender;

(2) On December 31, 1982, according to Husby, he last used cocaine, having used it throughout law school and his practice of law;

(3) In late February or early March 1983, Husby smuggled marijuana to Rocky Blair * in jail, not knowing that Blair was "wired" by the police;

(4) In May 1983, Husby bought cocaine for a fellow attorney at the Public Defender's Office;

(5) On May 26, 1983, Husby resigned Public Defender position;

(6) In June 1983, he was investigated by the State Division of Criminal Investigation;

(7) On August 16, 1983, he testified before the grand jury that he had no involvement with drugs, had not seen drugs, and had not been with his fellow public defender when a drug deal was allegedly made;

(8) Later, on August 16, 1983, after being told by the attorney for whom Husby had secured cocaine, that he had already admitted the truth regarding the cocaine deal, Husby attempted to recant his own testimony, but the Attorney General did not allow it;

(9) On October 20, 1983, the grand jury indicted Husby for perjury (SDCL 22-29-1);

(10) On January 4, 1984, an information was filed charging Husby with unauthorized possession of a controlled substance, cocaine (SDCL 22-42-5);

(11) On January 5, 1984, Husby entered a plea bargain agreement by which he pled guilty to the possession of cocaine charge in exchange for the dismissal of the perjury charge (the

Attorney General was influenced by the fact that Husby had tried to recant his false testimony the same day he had lied);

(12) On February 16, 1984, Husby was given a suspended sentence and probation;

(13) On March 26, 1984, Husby's license was suspended by an order of the Supreme Court, per SDCL 16-19-37 (case no. 14527, not listed in N.W.2d reporter).

As set out above, Husby's suspension was based on the possession conviction. This charge concerned cocaine, not the smuggling of marijuana into jail when he was acting as an officer of this Court. The perjury charge was dropped altogether. During one of Husby's taped conversations with Blair, Blair claimed to have used cocaine with Husby, in the jail "attorneys' room," but no other evidence concerning that incident surfaced, and Husby told the Disciplinary Board that Blair had concocted that story.

Particular attention is drawn to Item 8, above. Husby did not attempt to recant his perjured testimony before the grand jury until the attorney for whom he had secured cocaine had already informed the grand jury of Husby's involvement.

Husby has a statement, in his Petition for Reinstatement, that need not be taken out of context by anyone; it says what it says. It says, *inter alia:* "I have gone out and solicited their business and stolen it away from a competitor, setting up computer systems." His involvement in the credit reporting business is very braggadocio. In his Petition for Reinstatement, he seems to hedge on his part, nay his complicity, in purchasing cocaine and supplying it to a fellow attorney by trying to emphasize the fact that he did not make any money on the transaction.

In my opinion, Husby has not met the clear and convincing standard of proof for

---

* Rocky Blair was awaiting trial for rape and murder of a young woman who had gone to McKennan Hospital at Sioux Falls, South Dakota, to drop off a car for her mother, an employee of that hospital. Blair was a parolee from the State Penitentiary and abducted her by force. *See Small v. McKennan Hosp.,* 403 N.W. 2d 410, 411 (S.D.1987).

reinstatement (SDCL 16–19–84; *In re Voorhees*, 403 N.W.2d 738 (S.D.1987)), as he has not established his fitness to practice law; therefore, I would not grant his Petition for Reinstatement. I have fully read this Court's file on the first proceedings regarding Husby (*Husby I*). This Court was not presented with all of the facts in *Husby I* which are now before us in *Husby II*. The extent of Husby's involvement in criminal activity is not detailed in the original file. A verbatim transcript was not filed in *Husby I* detailing his criminal activities; however, a verbatim transcript has been filed in *Husby II*. Correspondence contained in *Husby I* by Chief Justice Jon Fosheim dated March 3, 1983, to the Secretary–Treasurer of the State Bar of South Dakota, and a letter by the Clerk of this Court dated May 24, 1984, to Attorney James Zieser, Board Counsel, Disciplinary Board of the State Bar, glaringly reveal that this Court was limited to a determination of the extent of final discipline resulting from his conviction of a serious crime. Further, these documents reveal that other allegations of Husby's misconduct had to be brought before this Honorable Court by either a complaint or further report or a further recommendation from the Disciplinary Board. Chief Justice Fosheim made it very plain, in his letter of March 3, 1983, that other types and kinds or allegations of misconduct could not be used for disciplining Husby in the disciplinary proceeding which was then pending. Therefore, there were never any further formal charges pertaining to other conduct upon which this Court could act, as the Disciplinary Board of the State Bar never proceeded to take further actions or make further recommendations. I was not aware of the extent of Husby's activity in *Husby I* because this Court, by its own limiting action, foreclosed a consideration of further allegations of misconduct.

Each case must be reviewed on its own set of facts. We review each case on the record. The question before this Court is whether Husby should be reinstated. On the current record, he should not be. Details showing the grievous conduct of Husby were not developed in the disciplinary proceeding as I have outlined above. These facts were, however, developed in Husby's hearing on reinstatement before the Disciplinary Board, a transcript of which is *now* part of the record. These newly developed facts are before us for the first time.

Comparison of Husby's behavior to this State's Rules of Professional Conduct (SDCL 16–18, Appx.) reveals numerous violations of the Rules:

Rule 1.2. *Scope of Representation.*

\* \* \* \* \* \*

(d) A lawyer shall not ... assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent ... [.] [*see* former DR 7–102(A)(7)]

Rule 8.4. *Misconduct.* [Patterned after former DR 1–102]

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct [*see* former DR 1–102(A)(1)] [or] knowingly assist or induce another to do so ...;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; [*see* former DR 1–102(A)(6)]

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [*see* former DR 1–102(A)(4)]

(d) engage in conduct that is prejudicial to the administration of justice[.] [*see* former DR 1–102(A)(5)]

Of particular interest is the Comment to Rule 8.4, which provides, in part: "A pattern of repeat offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." This indifference to legal obligation is demonstrated vividly by his own attorney's declarations to this Court, at a hearing on his Petition for Readmission, when his attorney expressed that Husby was caught up in drugs at the State University (using them as a law student) and then later being involved and using drugs

in both Rapid City and Sioux Falls as an attorney.

On the current record, I dissent. Husby may, under SDCL 16-19-87, petition for reinstatement at a later time if this Court dismisses his present petition based upon a deeper development of his commitment to useful citizenship and upon a new or adequate showing of fitness. By this dissent, he is not being professionally flogged for a lifetime and the door, under the statutes of this state, would be open for him in the future.

In a very recent disciplinary proceeding before this Court, *In re Discipline of Dana,* 415 N.W.2d 818, 823 (S.D.1987), as an attorney at law, this Court quoted SDCL 16-19-31, using said statute, in a unanimous decision, as a basis for discipline. It states:

> The license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration

of justice as an attorney and as an officer of the court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

Under the state of this record, which now reveals far more grievous conduct than the facts in the suspension of the practice of law in *Husby I,* I cannot participate in a "continuing proclamation" that "the holder [Husby] is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court."