In the Matter of the DISCIPLINE OF Gustav K. JOHNSON, as an Attorney at Law.

No. 17424.

Supreme Court of South Dakota.

Argued Dec. 4, 1991.

Reassigned May 26, 1992.

Decided Aug. 12, 1992.

Rehearing Granted Sept. 16, 1992.

---

R. James Zieser, Tyndall, for complainant Disciplinary Bd.

Donald R. Shultz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for respondent Johnson.

SABERS, Justice (On reassignment).

The sole issue in this original proceeding is the appropriate discipline to be imposed.

## FACTS

Gustav K. Johnson (Johnson) graduated from the University of South Dakota School of Law and was admitted to the South Dakota State Bar Association in 1984. After graduation, Johnson began work for the South Dakota Division of Banking and Finance as legal counsel. After leaving this position, Johnson was engaged in the private practice of law in Pierre, South Dakota, until he was appointed as deputy state's attorney in Pennington County. Johnson remained in that position until forced to resign in April of 1990. Johnson was primarily involved in advising and representing Pennington County in civil matters, but was involved in some criminal prosecutions.

During the course of a drug investigation by the Attorney General's Office and the Division of Criminal Investigation, Johnson's drug usage surfaced. Johnson was confronted in regards to this problem in the spring of 1990. He later entered a guilty plea to a misdemeanor charge of possession of marijuana and received one year probation. The proceeding generated extensive press coverage in Pennington County and western South Dakota and Johnson was forced to resign his position with the Pennington County State's Attorney's Office.

After Johnson's plea and sentence, the Disciplinary Board initiated its investigation of his conduct. This investigation resulted in a formal accusation being filed with this Court alleging violations of Canon 1 of the Code of Professional Responsibility; Disciplinary Rule 1–102(A)(3),(5), and (6); and Rule 8.4 of the South Dakota Rules of Professional Conduct.[1] Johnson's answer to the formal accusations admitted the possession and use of controlled substances.

This Court appointed the Honorable Eugene E. Dobberpuhl as referee in this mat-

---

1. The Code of Professional Responsibility and the Disciplinary Rules were repealed in 1987 and replaced with the Rules of Professional Conduct, SDCL ch. 16–18, Appx. Rule 8.4 is substantially similar to the prior versions and states in part:

   "It is professional misconduct for a lawyer to:

   ....

   (B) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

   ....

   (D) engage in conduct that is prejudicial to the administration of justice."

ter. The hearing was conducted by the referee in Rapid City, South Dakota on August 15, 1991. Johnson testified that he purchased, used, possessed, and shared marijuana with other acquaintances at least one hundred times since his admission to the bar. This was referred to as "recreational" use of illicit drugs. Johnson further admitted to using cocaine on one occasion although there was testimony from a fellow deputy state's attorney that Johnson had snorted cocaine at least twice in a "recreational" setting. Johnson admitted that he was aware that the use and possession of illicit drugs was a violation of the laws which he had taken an oath to uphold. In regards to the cocaine incident, he testified that:

> I had done something to commit a felony in South Dakota and it was just—as—as an attorney, as a deputy state's attorney, it was an insane thing for me to be going out and doing that.

Notwithstanding his fairly long history of drug use, Johnson further testified that he was not addicted to drugs, never sold drugs, and stopped all use of any type of illicit drugs since this problem came to light.

Several witnesses appeared in behalf of Johnson. All these witnesses stated that in a professional capacity Johnson had performed well, his clients had not been damaged by his illicit drug use, and he never appeared at work or in court appearing to be under the influence of drugs. The referee found that Johnson violated the criminal statutes of the State of South Dakota and the Code of Professional Responsibility and submitted the following recommendation to this court:

> That Gustav K. Johnson be suspended for a period of ninety days from the practice of law in all of the Courts of the State of South Dakota and that said suspension be deemed satisfied and given credit for a lengthy time of de facto suspension imposed by the circumstances of this case. Further, that he comply with the following conditions:
>
> 1. That Gustav K. Johnson for a period of one year and hopefully forever, refrain entirely from the illegal use of drugs.
> 2. That for a period of one year not commit any act that would constitute a violation of the code of professional responsibility or that would constitute grounds for an imposition of a discipline pursuant to SDCL ch. 16–19 and acts amendatory thereto.
> 3. That Gustav K. Johnson perform 50 hours of community service.
> 4. That if it is practical and possible, that Gustav K. Johnson relate his history and his pain suffered to the law students at USD or in the alternative, if possible, at least to the ethics class at said school.
> 5. That Gustav K. Johnson be required to reimburse all units of government and the Disciplinary Board for its costs.

In disciplinary proceedings, this court strives to protect the public from fraudulent, unethical, or incompetent practices by attorneys and preserve the image and integrity of the legal profession as a whole. *Matter of Discipline of Simpson*, 467 N.W.2d 921 (S.D.1991); *Matter of Pier*, 472 N.W.2d 916 (S.D.1991). Although the public does not appear to need protection from Johnson as far as his work is concerned, an attorney can not shirk his professional responsibility in his personal life. *Comm. on Professional Ethics v. Shuminsky*, 359 N.W.2d 442 (Iowa 1984). Obedience to the law and compliance with the Code of Professional Responsibility is important by every attorney admitted to practice this honorable profession. An attorney must be held to a higher standard of conduct, particularly with respect to upholding and complying with the precepts of the law and the legal profession. If an attorney knowingly and repeatedly violates the law, he places his license to practice in jeopardy and his actions result in a loss of respect for the profession from the public.

In *Matter of Parker*, 269 N.W.2d 779 (S.D.1978), a case involving use of drugs, this Court stated:

> As officers of this court, attorneys are charged with the obedience of the laws

of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

*Id.* at 780. This Court has attempted, through a series of cases, to convey a message to the practicing bar that if you get involved in the use of drugs and are caught—expect to be disciplined. *Matter of Discipline of Hopp*, 376 N.W.2d 816 (S.D.1985); *Matter of Discipline of Willis*, 371 N.W.2d 794 (S.D.1985); *Matter of Discipline of Strange*, 366 N.W.2d 495 (S.D. 1985); *Matter of Discipline of Kessler*, 366 N.W.2d 499 (S.D.1985); *Matter of Discipline of Brende*, 366 N.W.2d 500 (S.D. 1985).

■ It is apparent that this message did not deter Johnson from his recreational pursuits. Johnson was a deputy state's attorney during much of the time he committed the actions complained of and his position required of him a higher standard of conduct to preserve the public trust in our system of justice. His thirst for personal pleasure caused him to violate this trust and brought into question his fitness and qualifications to practice law.

We also consider that:
(1) Johnson admitted to the commission of 100 misdemeanors (possession and use of marijuana) and one felony (use of cocaine) even though his only con-

viction was for possession of marijuana—a misdemeanor.

(2) The conviction of a serious crime under SDCL 16–19–36 [2] resulted in disbarment in: *Matter of Discipline of Hendrickson*, 456 N.W.2d 140, 141 (S.D.1990); *Matter of Discipline of Janusz*, 439 N.W.2d 559, 561 (S.D. 1989); *Matter of Discipline of Coacher*, 438 N.W.2d 549, 550 (S.D. 1989); *Matter of Discipline of Moeckly*, 401 N.W.2d 537, 538 (S.D. 1987); *Matter of Discipline of Reutter*, 379 N.W.2d 315, 316 (S.D.1985); *Matter of Looby*, 297 N.W.2d 487, 488 (S.D.1980); and *Matter of Voorhees*, 294 N.W.2d 646, 646 (S.D.1980).

(3) Commission of 1 felony and 100 misdemeanors is at least as serious as the conviction of a serious crime under SDCL 16–19–36.

(4) "The *commission* of 'serious crimes' implicates the need to protect the public and the profession." *Hendrickson*, 456 N.W.2d at 141 (emphasis added).

■ The ultimate decision on the discipline imposed rests with this Court. Recommendations from the Disciplinary Board and the referee are given careful consideration but are not binding. The right to practice law must not only be earned, but preserved. Johnson's conduct clearly indicates that he placed too little value on his right to practice law. "[T]he image and integrity of the legal profession is damaged every time a court permits an attorney guilty of such serious misconduct to practice law again." *Simpson*, 467 N.W.2d at 925 (Sabers, J., dissenting). For these reasons, Johnson is disbarred [3] from the practice of law.

2. **SDCL 16–19–36. Attorney's conviction of serious crime to be reported to Supreme Court—Definition of serious crime.** The clerk of any court in this state in which an attorney is convicted of a serious crime shall within ten days of said conviction transmit a certificate thereof to the Supreme Court. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper con-

duct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.

3. Disbarment prevents one from practicing law as a licensed attorney in South Dakota for five years. During that time, it does not prevent one from engaging in any other occupation.

HENDERSON, J., concurs with a writing.

MILLER, C.J., concurs specially.

WUEST and AMUNDSON, JJ., dissent.

HENDERSON, Justice (concurring).

As a deputy state's attorney of Pennington County, Johnson used marijuana on at least 100 occasions and cocaine at least once and probably twice.

He was an Officer of the Court and appeared at criminal arraignments and sentencings. Contrary to some assertions herein, he was *not* just a civil litigator.

Per arguments before this Court, Johnson has never had counseling for his drug habit nor is he contemplating any treatment and/or counseling.

Under questioning by this writer at the Supreme Court Courtroom, Johnson admitted to using drugs since he was sixteen years of age.

Formally, Johnson has admitted to the use of controlled drugs as reflected by the pleadings herein. He has expressed that acting as a deputy state's attorney "it was an insane thing for me going out and doing that." I agree.

By his own admissions, he blatantly violated his trust. The trust imposed upon him, inter alia, was to represent the people of South Dakota, and particularly Pennington County, in the State's Attorney's office prosecuting criminal drug charges. Johnson prosecuted people for the very acts he was committing.

I must vote for disbarment herein. After five years, under SDCL 16–19–87, Johnson can apply for readmission and upon passing an examination, including a test on Ethics. This latter test is the Multistate Professional Responsibility Examination.

Johnson must meditate upon his wrongdoing and rectify his life—so that—once again he is fit to practice law in this state. More specifically, he must undergo counseling and treatment to completely free himself from a commitment to use drugs, a habit he has formed since the age of sixteen.

This case is distinguishable from *Matter of Reinstatement of Husby,* 426 N.W.2d 27 (S.D.1988); *Matter of Hopp,* 376 N.W.2d 816 (S.D.1985); *Matter of Willis,* 371 N.W.2d 794 (S.D.1985); *Matter of Strange,* 366 N.W.2d 495 (S.D.1985); and *Matter of Kessler,* 366 N.W.2d 499 (S.D.1985) because Johnson prosecuted citizens for the very criminal acts that he, himself, was committing. Equal justice, under the law, must attend for all or it attends for none.

MILLER, Chief Justice (concurring specially).

While recognizing that the majority's discipline seems to be quite harsh, I feel compelled to join it. I would have preferred a 2– or 3–year suspension, but was unable to persuade other justices that such was the appropriate discipline. My conscience, along with my perceived obligation to the bench, bar, and public, will not allow me to join Justices Amundson and Wuest. I consider their suggestion of a 120–day suspension to be unduly permissive. With the competing, uncompromising positions of the other justices being "set in stone," I am in the unenviable position of having to select between two alternatives, neither of which is totally acceptable to me. Below I have set forth my rationale for joining Justices Sabers and Henderson.

In *Matter of Voorhees,* 294 N.W.2d 646, 647–48 (S.D.1980) we set forth the proper, applicable disciplinary standard, saying:

> As officers of this court, attorneys are charged with the obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of [their] position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude....
>
> ... To determine whether discipline other than disbarment would be appropriate,

the circumstances surrounding the conviction will be considered, i.e., whether the conduct involved dishonesty, fraud, deceit, or misrepresentation; ... whether the conduct adversely reflects upon the attorney's integrity, competency, or fitness to practice law.

(Quoting *Matter of Parker*, 269 N.W.2d 779, 780 (S.D.1978)). *See also, Discipline of Hendrickson*, 456 N.W.2d 140 (S.D. 1990); *Matter of Looby*, 297 N.W.2d 487 (S.D.1980); *Matter of Weisensee*, 296 N.W.2d 717 (S.D.1980), *cert. denied*, 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 227 (1981).

I am convinced that to allow Johnson to first receive the unexplained (or unexplainable) prosecutorial leniency through the dismissal and reduction of the large number of drug offenses, and then be followed by a short suspension as suggested by Justices Amundson and Wuest, would be inappropriate and would subject this court and the legal profession to justifiable public ridicule. Similarly, it would, for reasons articulated in Justice Sabers' writing, send the wrong message to other attorneys who may be disposed or inclined to participate in the drug environment. Further, to follow the minority's suggestion would be completely unfair to the vast majority of lawyers who obey the laws and follow the canons of ethics. If I must err in this case, I will do so on the side of elevating the reputation and integrity of the legal profession over concerns for an individual attorney who has, through his own flagrant, unlawful conduct, tarnished the reputation of us all.

WUEST, Justice (dissenting).

I agree with the writing of Justice Amundson and join the same. Chief Justice Miller asserts in his special writing he would agree to a 2 or 3 year suspension. Although I prefer the disposition proposed by Justice Amundson, I would join Chief Justice Miller in a two-year suspension to avoid disbarment.

AMUNDSON, Justice (dissenting).

The majority opinion correctly states the principles which this court has adopted in deciding attorney discipline cases, but ignores the fact that the purpose of discipline is not to punish. *Matter of Pier*, 472 N.W.2d 916 (S.D.1991).

This is not the maiden voyage by this court involving substance abuse by a practicing attorney. *Matter of Reinstatement of Husby*, 426 N.W.2d 27 (S.D.1988) (the written opinion on reinstatement), involved the discipline of an attorney who, while employed as a public defender, provided controlled substances to a client charged with a major crime. The attorney in that case was suspended from the practice of law for three years.

A battery of discipline cases involving usage and possession of controlled substances by licensed attorneys came before this court in 1985, with the following results:

(1) *Matter of Discipline of Willis*, 371 N.W.2d 794 (S.D.1985), where attorney admitted to using cocaine on several occasions and was given a 180-day suspension from the practice of law with 90 days held in abeyance under certain conditions.

(2) *Matter of Strange*, 366 N.W.2d 495 (S.D.1985), where attorney admitted to using and possessing cocaine on numerous occasions during the 1979 to 1982 time period and was given a 90-day suspension from the practice of law .. In this decision, the special concurrence stated that the discipline of the court "*is stern and not lenient, it is not indulgent but is exacting to the degree that it forewarns young lawyers ... of the dangers of usage of a drug such as cocaine.*" *Id.* at 497-98. (Emphasis added.)

(3) *Matter of Kessler*, 366 N.W.2d 499 (S.D.1985), where attorney admitted to possession and use of cocaine ten or twelve times during 1982 and was given same discipline as handed down in *Strange, supra.*

(4) *Matter of Brende*, 366 N.W.2d 500 (S.D.1985), where counsel was found to have possessed and used cocaine

about ten times during 1981 and again the same discipline as meted out in *Strange* and *Kessler* was received in this case.

There is no question that discipline in a case has to be tailored to the facts involved. In determining what discipline is appropriate in a given case, this court should give consideration to our earlier decisions involving similar facts and circumstances. *Committee on Professional Ethics v. Klein*, 394 N.W.2d 358 (Ia.1986). The majority has not given our prior decisions the appropriate deference. I can state without hesitancy that these prior cases were given thorough scrutiny by the disciplinary board, the referee, and this court, since I was a member of Board at that time.

The main distinction between the *Johnson* case and the above-mentioned cases is the fact that Johnson was a public employee, to-wit: deputy state's attorney. There is no question that an individual who is sworn to enforce and uphold the law such as a public sector attorney should be well aware of what conduct is criminal and what conduct does not violate the laws which the attorney is sworn to enforce. This record clearly discloses that Johnson worked in the civil section of the state's attorney's office and infrequently became involved in any aspect of criminal prosecutions. His appearances in criminal cases were minimal and mostly to assist or fill in for other members of the office. This individual was not prosecuting drug cases during his tenure with the Pennington County State's Attorney's Office.

Johnson has admitted that his brainless conduct was insane and inappropriate. On the other hand, the record reflects that this is not a case where Johnson's proclivity to indulge in smoking pot and snorting coke led to his misappropriating client's funds, failure to perform legal duties with due diligence, or performing services while under the influence of the substances. Quite to the contrary, the record reflects that individuals he worked with, attorneys he practiced against and with, his supervisor the Pennington County State's Attorney,

and a circuit court judge all confirmed that he handled his work and appearances in a professional and competent fashion. It seems quite obvious to this writer that this is not a case where the public is crying out for protection from a scurrilous, incompetent, or thievish attorney.

The legal profession in this state has acknowledged the problem presented by alcoholism and substance abuse addiction by the recognition of the Lawyers Concerned for Lawyers adjunct organization. Attorneys who cannot control addiction to alcohol or drugs are sometimes classified as being impaired due to their inability to refrain from using such substances. The bar, through this committee, is trying to reach out and assist fellow members of the bench and bar afflicted by such an infirmity in rehabilitating themselves. This court should not close its eyes or minds to rehabilitation when viewing a case where no injury has been inflicted on the public, but quite to the contrary, the real injury is to the attorney himself. Johnson, when confronted by the authorities in regards to the drug investigation, was conciliatory and admitted his misdeeds. There is no question in this Justice's mind that this individual rues the day when he broke the law which he was sworn to uphold.

With these considerations in mind, I feel the following discipline is more appropriately warranted in this particular case:

That Johnson be suspended from the practice of law for one hundred twenty days, the suspension to begin thirty days after the entry of the order of suspension. SDCL 16–19–77. Further, Johnson comply with the following conditions:

1. Refrain from illegal use of drugs— which should go without saying.

2. Be evaluated by a certified drug counselor for a determination of whether or not he is a candidate for any type of treatment for chemical dependency and to undertake and successfully complete any recommended course for treatment. This evaluation result shall be filed with this court and the State Bar. In the event treatment is prescribed, proof of successful com-

pletion of such treatment shall be filed with this court and the State Bar prior to reinstatement.

3. Be available to share and discuss his experiences in this proceeding with young lawyers and law students to assist this court in relaying this message.

4. Reimburse all costs incurred in this proceeding.*

In conclusion, I perceive the discipline meted out by the majority opinion to equate to punishment, punishment, punishment, punishment, and punishment, which is the net result of tossing Johnson out of the practice of law for five years. Johnson's budding legal career has been pulled out by the roots and cast aside into the proverbial landfill.

---

* The special writing of Chief Justice Miller portrays this Justice's recommended discipline as permissive, uncompromising and "set in stone." I must respond, because this discipline is an alternative provided for in SDCL 16–19–35. Further, this recommended discipline follows the previous precedents established for this type of case by this court. If these prior decisions were so permissive as to subject the legal profession to public ridicule, I have certainly never been made aware of such criticism being heaped upon the profession since 1985. It also is apparent that the disciplinary board did not perceive these prior decisions as lenient or unsound. I dare say that, had there been a public outcry that these prior decisions were another example of professional courtesy, the board would have been more aware of that sentiment than this court in view of their day-to-day contact with the public and other members of the bar. We should not lose sight of the fact that the suspension from practice for a sole practitioner for even a day is harsh. I firmly believe that my recommended discipline is appropriate under the facts of this case, is based on established precedent, and conveys a message to the public that these types of transgressions on the part of a member of the honorable legal profession will not be "swept under the rug."