**In the Matter of the DISCIPLINE OF James L. JEFFRIES, as an Attorney at Law.**

**No. 17435.**

Supreme Court of South Dakota.

Argued Dec. 4, 1991.

Decided Aug. 12, 1992.

Rehearing Granted Sept. 16, 1992.

---

R. James Zieser, Tyndall, for Complainant Disciplinary Bd.

Charles B. Kornmann of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for respondent Jeffries.

MILLER, Chief Justice.

This is an attorney discipline proceeding relating to James L. Jeffries. Since he has generally admitted the allegations against him, we are principally dealing with the appropriate discipline to impose.

## FACTS

Jeffries, age 36, was admitted to practice law in this state on December 19, 1984. Thereafter, on January 14, 1985, he went to work in Rapid City, South Dakota, as a deputy state's attorney for Pennington County. In that capacity he prosecuted a great number of criminal cases, including drug cases. On October 14, 1987, he left the state's attorney's office to take a higher paying job at Rapid City Regional Hospital.

As the result of a drug investigation in Rapid City, law enforcement officers contacted Jeffries on March 19, 1990, concerning his alleged drug use during the time he was a deputy state's attorney. Jeffries admitted that he had possessed and used marijuana hundreds of times and that he had used and shared cocaine on at least 15 occasions. Jeffries ultimately entered into a plea arrangement with the Attorney General's Office whereunder he was granted use immunity on all drug charges, except a Class II misdemeanor charge of possession of marijuana, in exchange for his cooperation.[1] He entered a guilty plea to the misdemeanor charge. Jeffries spent one day in jail and he paid a small fine.

The Disciplinary Board (Board) of the State Bar of South Dakota investigated the matter and made a recommendation to this court that formal disciplinary action was warranted and further recommended that Jeffries be suspended from the practice of law for 90 days under various conditions. Upon receiving Board's recommendation, this court, pursuant to SDCL 16–19–67, directed it to file a formal accusation. Ultimately, Circuit Judge Eugene L. Martin was appointed referee. SDCL 16–19–68. After an evidentiary hearing, Judge Martin recommended to this court that Jeffries be disbarred.

In all proceedings before Board and Judge Martin, Jeffries admitted he was chemically dependent. He testified that he had voluntarily entered a treatment facility. As we stated above, he also admitted that he had possessed and used cocaine and marijuana on several occasions during the time he was licensed to practice law. His testimony in that regard is quite revealing. He stated that he was using marijuana weekly,[2] at and before December, 1984 (when he was admitted to practice), until December, 1989, approximately 50 to 100 times per year. He admitted to selling it to friends for no profit (sharing).[3] As to his cocaine use, he testified that he used it as early as December, 1984, and had done so on at least 15 occasions.[4] Therefore, by his own admission, he committed several felonies and misdemeanors.

Although convinced it did not affect his abilities as a prosecutor, he conceded that using cocaine at the same time he was prosecuting others for the same conduct "made me nervous as hell." He indicated that he stopped his use of cocaine in October, 1987, and his use of marijuana in De-

---

1. The maximum penalty for a Class II misdemeanor charge at that time was thirty days' imprisonment in a county jail or a $100 fine, or both. *See* SDCL 22–6–2(2).

2. Under South Dakota law, possession of less than one-half pound of marijuana is a Class 1 misdemeanor. SDCL 22–42–6.

3. Under South Dakota law, distribution of less than one-half ounce of marijuana without consideration is a Class 2 misdemeanor. Distribu-

tion of marijuana in larger quantities varies from a Class 1 misdemeanor to a Class 4 felony, depending upon the quantity involved. SDCL 22–42–7.

4. Under South Dakota law, possession of cocaine constitutes a Class 5 felony punishable by five years imprisonment in the state penitentiary; a $5,000 fine may also be imposed. *See* SDCL 22–42–5 and 22–6–1.

cember, 1989. He entered drug treatment in March, 1990, which was after he was contacted by the police.

At the hearing before Judge Martin, various attorneys, including co-workers in the state's attorney's office, police officers and friends testified on Jeffries' behalf. They all testified that he had been a good, aggressive prosecutor and that his former drug usage had not impaired his legal abilities. Three local circuit judges testified positively, by deposition, to his preparedness and professionalism in their courts.

## DECISION

All lawyers admitted to practice in this state are subject to discipline by this court and Board. SDCL 16–19–21. However, only this court has the authority to suspend and revoke an attorney's license to practice law in this state. SDCL 16–19–22. Under SDCL 16–19–35, various kinds of discipline are available to us, including disbarment, suspension, placement on probationary status and public censure.

The referee in this case has recommended disbarment. "It is the settled rule in this State that 'While the findings of the referee are not conclusive, ... they are nevertheless entitled to our careful consideration[.]'" *Matter of Discipline of Strange*, 366 N.W.2d 495, 497 (S.D.1985) (quoting *Matter of Discipline of Theodosen*, 303 N.W.2d 104, 106 (S.D.1981)). "If the referee's findings are supported by the evidence, they will not be disturbed by this Court." *Strange*, 366 N.W.2d at 497. "It does not necessarily follow, however, that the referee's recommendations will also be adopted." *Id.*

■ Disciplinary proceedings have two goals: (1) to protect the public from further fraudulent, unethical or incompetent activities involving this attorney; and (2) to preserve the image and integrity of attorneys, the bar association and the legal profession. *Matter of Discipline of Simpson*, 467 N.W.2d 921, 921–22 (S.D.1991); *Matter of Discipline of Hendrickson*, 456 N.W.2d 140, 141–42 (S.D.1990). "The purpose of disciplinary proceedings is not to punish but to remove from the profession those

attorneys whose conduct has proved them unfit to be entrusted with duties and responsibilities belonging to the office of an attorney so that the public may be protected from further wrong-doing." *Hendrickson*, 456 N.W.2d at 141; *Matter of Discipline of Stanton*, 446 N.W.2d 33, 42 (S.D. 1989).

It is important to stress that "[t]he right to practice law is a privilege granted upon demonstration of satisfactory moral fitness and adequate legal and general learning. To continue this privilege, a lawyer must maintain his fitness and qualifications." *Strange*, 366 N.W.2d at 497.

■ In this light, we consider the circumstances surrounding the drug usage in this case. We first point to the fact that Jeffries' conduct spanned the effective dates of both the Code of Professional Responsibility and the Rules of Professional Conduct. Board asserts, and we now find, that Jeffries violated all of the following portions thereof:

Canon 1 (Code of Professional Responsibility) A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession.

. . . .

Disciplinary Rule 1–102 Misconduct.

(A) A lawyer shall not:

. . . .

(3) Engage in illegal conduct involving moral turpitude.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Rule of Professional Conduct 8.4:

It is professional misconduct for a lawyer to:

. . . .

(b) [C]ommit a criminal act that reflects adversely on the lawyer's hones-

ty, trustworthiness or fitness as a lawyer in other respects;

. . . .

(d) [E]ngage in conduct that is prejudicial to the administration of justice[.]

Jeffries testified that he first tried marijuana in 1973 when he was in high school. His drug use continued throughout college and law school. After he was admitted to practice law, his use of marijuana was generally on weekends or during vacation. He also used cocaine four or five times a year during the time he was licensed to practice law, including the time he was prosecuting drug cases. He was aware that this activity constituted a felony under South Dakota law.

After being contacted by Rapid City law enforcement authorities concerning his drug use, Jeffries entered a drug rehabilitation center for his alcohol and drug abuse, arguably as part of his plea arrangement. He currently attends AA programs on a regular basis. The record does not reveal that Jeffries' drug use ever harmed his work or clients. However, Jeffries has tarnished the image and integrity of attorneys; and, more importantly, he has, as a prosecutor, violated the public trust by personally ignoring the very laws he had sworn to uphold.

> As officers of the court, attorneys are charged with the obedience of the laws of this state and the United States. The intentional violation of those laws ... by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

*Matter of Discipline of Moeckly*, 401 N.W.2d 537, 538 (S.D.1987) (quoting *Matter of Discipline of Reutter*, 379 N.W.2d 315, 316 (S.D.1985)); *Hendrickson*, 456 N.W.2d at 141–42; *Matter of Discipline of Looby*, 297 N.W.2d 487, 488 (S.D.1980); *Matter of Discipline of Parker*, 269 N.W.2d 779, 780 (S.D.1978). If a public prosecutor does not

comply with the laws of this state, how can we expect the public to follow them?

We recognize that Jeffries is not the first attorney to have illegally used drugs. This court, in the past, has tried to send the message that this behavior is not acceptable and will not be tolerated. *See Matter of Discipline of Husby*, 426 N.W.2d 27 (S.D.1988); *Moeckly, supra; Reutter, supra; Matter of Discipline of Hopp*, 376 N.W.2d 816 (S.D.1985); *Matter of Discipline of Willis*, 371 N.W.2d 794 (S.D.1985); *Matter of Discipline of Brende*, 366 N.W.2d 500 (S.D.1985); *Matter of Discipline of Kessler*, 366 N.W.2d 499 (S.D. 1985); *Strange, supra.*

Jeffries told this court that he was an intern in Sioux Falls, South Dakota, at the time that attorneys Strange, Kessler and Brende were disciplined. He stated at the hearing before this court: "[T]he fact that [Strange, Kessler and Brende] were having problems had not escaped me." Obviously, however, the message this court tried to send attorneys during the mid–1980s did escape Jeffries.

■ Consideration of all the evidence leads this court to believe that in this case the proper discipline is disbarment.[5] Jeffries' conduct reveals that he had little respect for the privilege to practice his chosen profession. He has damaged not only his reputation, but also the image and integrity of the legal profession as a whole. Attorneys are held to a higher standard than the general public and the profession is entitled to know that there is a consequence when the standard is not met. *See, Parker*, 269 N.W.2d at 780. At this time, Jeffries has not demonstrated to this court that he is a fit and proper person to continue to practice law. Therefore, an order will be entered directing that Jeffries be disbarred.

SABERS, J., concurs.

HENDERSON, J., concurs with writing.

WUEST and AMUNDSON, JJ., dissent.

---

**5.** For reasons articulated in my special writing in *Discipline of Johnson,* 488 N.W.2d 682 (S.D. 1992), I personally would have preferred a three-year suspension.

HENDERSON, Justice (concurring).

A plea bargain disposed of several hundred criminal offenses committed by Jeffries. This resulted from the grant of "use immunity," by the South Dakota Attorney General's office, on all drug involvement except a Class II misdemeanor charge of possession of marijuana. These offenses were committed in the presence of Pennington County prosecutors. Jeffries was also a prosecutor. From December of 1984 to the late fall of 1987, Jeffries used cocaine on 15 separate occasions. He admits to using marijuana between December, 1984, and December, 1989. During this 5 year period, he used marijuana between 50 to 100 times per year.* A drug investigation by the Attorney General's office flushed out other prosecutors in Pennington County using drugs and Jeffries cooperated in exposing their criminality. Jeffries entered an alcohol (he extensively used alcohol, also) and drug treatment center at Hazeldon, near Minneapolis, Minnesota on April 8, 1990, and remained there for 30 days. In July and August of 1990, Jeffries had treatment at Yankton, South Dakota. It strikes this writer that said counseling, for the habits Jeffries had, was a short period of time. Jeffries, per this record, had sought assistance for his drug abuse problems at the Rapid City Hospital in March of 1990. This case was argued before this Court on December 4, 1991. Notwithstanding the above drug usage, and during a time when Jeffries was prosecuting drug cases, a host of witnesses came forward to express that his conduct in the trial court was "appropriate," "professional" and he was "well prepared." No one suspected, so the testimony reflects, that while he was prosecuting cases (approximately 50 jury trials, as an example), he was using drugs or alcohol. But this the record shows: Jeffries, himself, admits to this heavy use and while he prosecuted literally hundreds of drug cases. A clear preponderance of the testimony establishes very severe violations of several Canons of Ethics. *In re Goodrich,* 78 S.D. 8, 98 N.W.2d 125 (1959). There is simply no

doubt concerning Jeffries's conduct. *In re Jaquith,* 79 S.D. 677, 117 N.W.2d 97 (1962). A detective and a Captain on the Rapid City Police force both testified that Jeffries was "a vigorous prosecutor." Considering his personal use of drugs, this duplicity hardly militates in his favor. Jeffries was not applying "Equal Justice Under the Law."

When an appellate judge, far removed from the factual scenario and the personalities involved, reviews this ethical debacle, an objectivity surfaces which is not prevalent in the trial arena. A different perspective attends. Testimony of witnesses, who are friends, and opinions of his fellow attorneys, who shared his legal life, will not be enshrined in a law book on a wall. This case will be. It will join those cold and lifeless bound volumes in the Supreme Court library of this state, other jurisdictions, and law offices throughout this land. There, as the years roll on, it shall be judged in a vacuum of sterile review, not by the heat of the moment.

We should not mitigate our sanction due to the plea bargain. Jeffries' plea bargain should not be permitted to distort these disciplinary proceedings. In point of law, the Code of Professional Responsibility does not mandate a conviction for a criminal act; nay, it requires only the commission of such an act.

Was Jeffries' performance, in prosecuting drug cases, affected by his heavy reliance of drugs? Some witnesses below would suggest not. However, in his advocacy to establish that he is now "recovered," he advised the Disciplinary Board and the Referee appointed by this Court, that he is "thinking more clearly *now than before.*" Therefore, one's deductive conclusion is: He must have been influenced and impaired, to some degree, by the extent of the usage of controlled substances. And mind you, these words come from his own mouth. Alcohol, marijuana, and cocaine simply had to take some kind of a toll of his mental processes. In a nutshell, his

---

* *All* of these criminal activities were non-prosecuted. In his concluding Amended Answer, he

supplicates this Court for mercy. He has already received "mercy."

ability to participate in the justice system was, at best, under a tremendous cloud. Assuming arguendo, he did not suffer a physical, or mental impairment—what was his responsibility to the court that he practiced before—and the public? As he proceeded to hold the general public accountable for drug usage, what of his own accountability to the public? Conceptually, this is where the duplicity enters, abounds and then poisons the criminal justice system.

There appears to be a great emphasis, in the advocacy herein, upon the *best interests for this lawyer*. Should we not more properly address the consideration of the *best interests of the public?* And more, particularly, the South Dakota Rules of Professional Conduct? It strikes me that the integrity of the State Bar of South Dakota and the image of the legal profession in South Dakota justifies a more serious sanction than a suspension from the practice of law.

An appointed Referee of this Court, the Honorable Eugene L. Martin, entered 28 pages of formal "Findings and Recommendations." His ultimate conclusion was disbarment. We are not bound by this recommendation. *Discipline of Stanton*, 446 N.W.2d 33 (S.D.1989). We should, however, give it "careful consideration." *See, In re Discipline of Draeger*, 463 N.W.2d 346 (S.D.1990). Having heard all of the evidence, the Referee disagreed with the Disciplinary Board's recommendation of a 90 day suspension. The Referee relied, in part, upon a quote from our decision in *Matter of Discipline of Hendrickson*, 456 N.W.2d 140 (S.D.1990):

> Disbarment is warranted when it is clear that the protection of society requires such action *or* where the maintenance of respect for courts and judges *or* the respectability of the legal profession itself demands such action.

Based upon the Referee's extensive findings and conclusions, I would adopt the recommendation of the Referee.

Today, as demonstrated by President Bush's "War on Drugs" and the millions of taxpayers' dollars spent to eradicate the usage and sale thereof, we Americans live in a drug culture. It corrupts our youth and spawns crime. It attacks the weak and brings down the strong. It destroys the fabric of our American way of life. It is ugly, mean and venomous, feeding like a viper upon the bodies of children and human beings who become victims of its dreaded forces. It creates drug lords, making them millionaires, and this money spills into evil forces to commit further wrongs upon innocent people. Jeffries, by using drugs as a state prosecutor, and by purchasing marijuana for others, and then distributing them to friends, aided the drug culture. His role was to eradicate the drug culture. With the exception of a case wherein an attorney aided in distributing cocaine and conspired to distribute cocaine (sell cocaine), *Matter of Discipline of Reutter*, 379 N.W.2d 315 (S.D.1985); *Matter of Moeckly*, 401 N.W.2d 537 (S.D.1987) (conspiracy to import and distribute cocaine), the present case before us presents the most egregious conduct of an attorney involved in drugs presented to this Court.

In *State v. Barber*, 427 N.W.2d 375, 378 (S.D.1988) our Supreme Court expressed:

> Drug abuse is a peril to society and particularly to our youth. *State v. Pettis*, 333 N.W.2d 717, 720 (S.D.1983). The costs to society in terms of health and mental well-being and lost potential of young people involved in such activity are incapable of estimation. Further, in attempting to curb drug abuse, society is required to expend ever increasing financial resources in law enforcement and drug awareness and prevention campaigns.

Jeffries has forfeited his privilege of practicing law in this state. The respectability of the legal profession demands such forfeiture. How can the people of this state respect the criminal justice system when a state prosecutor, who prosecutes drug users, uses them himself? The answer is simple: They cannot.

Here, the enormity of the drug problem was exacerbated by the public's servant.

Per his testimony before the Board, his position as a deputy state's attorney was

his first employment as an attorney. It is noted that he testified before the Disciplinary Board he had a son and a "girlfriend" and was not married. He further testified that he was working "in house" at the Rapid City Regional Hospital; he was 35 years of age when the Referee entered Findings of Fact and Conclusions of Law herein. He is young enough to practice law again in South Dakota during his lifetime and gain grace within the legal profession.

Jeffries has the right to apply for readmission after 5 years. He would be required to pass a bar examination anew and also pass an Ethics examination. It could then be determined if he is, once again, fit to practice law and be an officer of the courts.

Most of us can face a crisis. Day to day living wears us out. It is day-to-day living that prevents or averts crisis. Jeffries has some day-to-day living to go through, to prove his legal and family commitment. When he proves to himself to have the character to stand up under the tribulations of each day, then both he and this Court can review his past, examine his then present circumstances, and have an educated viewpoint of what is yet to come.

WUEST, Justice (dissenting).

I agree with the writing of Justice Amundson and join the same. Chief Justice Miller asserts in his majority opinion he would agree to a three-year suspension. Although I prefer the disposition proposed by Justice Amundson, I would join Chief Justice Miller in a three-year suspension to avoid disbarment.

AMUNDSON, Justice (dissenting).

This is not a case which justifies the maximum sanction of disbarment. In this day and age, South Dakota is not the only jurisdiction to encounter members of its legal profession who have succumbed to the illness of addiction to controlled substances. The record in this case clearly exposes that Jeffries was addicted to drugs and alcohol and had been for a considerable period of time. It is also evident that such an addiction is considered an illness by experts in the field who treat these specific types of illnesses. Also, this record shows that notwithstanding his illness, Jeffries was a very competent trial attorney in the Pennington County State's Attorney's Office. (The state's attorney and three circuit court judges testified as to his competence as a prosecutor, and none observed or suspected that Jeffries was having a problem with alcohol or controlled substances.) Of course, it goes without saying that these witnesses did not approve of or condone Jeffries' conduct, which has brought him before this court, but agreed that he did not pose a threat to the public if allowed to continue in the practice of law.

In a recent decision from the Supreme Court of Vermont, *In re Berk*, 602 A.2d 946 (Vt.1991), an attorney admitted to having possessed cocaine on a number of occasions and involving an associate in the firm in the use of cocaine. The court found the appropriate discipline warranted under these circumstances was a suspension from the practice of law for a six-month period. The court held in this regard as follows:

The PCB [Professional Conduct Board] evaluated sanctions under the American Bar Association Standards for Imposing Lawyer Sanctions. We have found these standards helpful and have used them in arriving at attorney sanctions. *In re Rosenfeld*, —— Vt. [——] at ——, 601 A.2d [972] at 977–78. Under Standard 3.0, factors relevant to deciding sanctions include: (a) the duty involved; (b) the lawyer's mental state; (c) the actual or potential injury; and (d) any aggravating or mitigating factors.

Using this scheme, the PCB analyzed appellant's actions under Standard 5.0 as a violation of a duty owed to the public. See Introduction to Standard 5.0 ("The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct."). The board then looked at sanctions recommended for this violation. Under Standard 5.11, disbarment is an appropriate sanction

when a lawyer engages in "serious criminal conduct, a necessary element of which includes ... the sale, distribution or importation of controlled substances." The PCB rejected disbarment because it found no "evidence to indicate that [appellant] was engaged in commercial drug trafficking." *Instead, it recommended suspension, the appropriate sanction "when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."* Standard 5.12. Possession of narcotics is one of the crimes most commonly warranting suspension under this standard. Commentary to Standard 5.12.

602 A.2d at 950–51.

The Wisconsin Supreme Court also had the opportunity to deal with an attorney discipline case involving possession of cocaine in *Disciplinary Proceedings Against Watson*, 165 Wis.2d 493, 477 N.W.2d 844 (1991). In that case, the attorney, an assistant district attorney, possessed and used cocaine in the judge's chambers while judge was absent, and directed his secretary to falsify a driver's license receipt for a friend. The court found the use and possession of cocaine to be of a serious nature, aggravated by his official position and the use of this position to benefit a friend. This misconduct was found to warrant a one-year suspension from the practice of law. *See also Matter of Smoot*, 243 Kan. 589, 757 P.2d 327 (1988) (attorney convicted of one count of possession of one gram of cocaine was given a public censure with 100 hours of pro bono legal service); *State ex rel. Neb. State Bar Ass'n v. Matt*, 213 Neb. 123, 327 N.W.2d 622 (1982) (discipline of one-year suspension given to attorney who had aided and abetted criminal dealing in controlled substances).

Jeffries has completed a thirty-day chemical dependency treatment program and continued on with this after-care program. Further, Jeffries is an active member of the Lawyers Concerned for Lawyers Committee, which assists members of the bar with their problems involving alcohol or chemical dependency. It is obvious that the bar receives a benefit whenever an individual who has dealt with such a problem chooses to share his/her experiences in attempting to conquer these insidious illnesses. This, in my opinion, shows proof of rehabilitation which is an exceptional and compelling mitigating factor which needs to be considered in this case. Other mitigating factors are: Jeffries' obvious remorse, cooperation with the disciplinary board and law enforcement, and the voluminous evidence of his professional competency.

This court recognized rehabilitation as an important factor to consider in disciplinary cases in *Matter of Walker*, 254 N.W.2d 452 (S.D.1977), where misconduct of the attorney warranted a suspension from the practice of law but for his exemplary efforts at rehabilitating from his illness—alcoholism. In *Walker*, we held that alcoholism is not a defense to misconduct; but, in that case of first impression, the court considered counsel's rehabilitation efforts as sincere and fruitful so that a period of probation would serve as an incentive for counsel to continue his day-by-day efforts to overcome his illness. On numerous occasions, *Walker* has been recognized as authority in other jurisdictions for its appropriate guideline in dealing with attorney disciplines. There is no question that one can argue that alcohol is legal, and controlled substances are illegal. One can also argue that addiction to one or the other is an illness and other factors must be considered when meting out discipline in a case involving either substance. Disbarring Jeffries certainly does not provide any rehabilitation incentive for him or any other member of the bar. In fact, it appears that rehabilitation is no longer an appropriate factor to consider under the majority holding in Jeffries' case. The result in this case is to quash a promising career and undermine Jeffries' initiative to continue on his road to recovery. This tragic episode, unmarked by greed or venality, does not warrant the maximum punishment of disbarment.

In conclusion, I would find that the appropriate discipline in this case to be sus-

pension from the practice of law for three years, with the right to apply for readmission after one year, on the following conditions:

1.  James Jeffries continue his chemical dependency aftercare program and submit proof of compliance upon seeking reinstatement.
2.  James Jeffries perform one day of public service per month during the suspension period at the direction of the presiding judge of the judicial circuit where he resides.
3.  James Jeffries reimburse all costs incurred in this proceeding by the Disciplinary Board.

One sidelight to this case, which needs to be mentioned, is the fact that one of the witnesses at the hearing testified that he had used, grown, nurtured, and shared marijuana with Jeffries and others. This attorney candidly admitted this conduct to the Disciplinary Board and received a private reprimand. This individual also showed good judgment by not contesting his discipline. It is obvious that the rehabilitation of a thirty-day chemical dependency program was more of a mitigation factor in the eyes of the board than it is in this court.

This court, in 1985, found in five separate decisions * that the appropriate discipline in cases involving possession or use of cocaine was a suspension from the practice of law. Those cases and this case do not embrace facts showing a commercial enterprise for dealing drugs. If, in fact, this case did so show, disbarment would be the singular option. Since this court has previously aligned itself to the standards mentioned above, I certainly see no reason to deviate from our established rule of discipline in controlled substance usage cases involving attorneys.

---

* *Matter of Discipline of Hopp,* 376 N.W.2d 816 (S.D.1985); *Matter of Discipline of Willis,* 371 N.W.2d 794 (S.D.1985); *Matter of Discipline of Brende,* 366 N.W.2d 500 (S.D.1985); *Matter of* *Discipline of Kessler,* 366 N.W.2d 499 (S.D.1985); *Matter of Discipline of Strange,* 366 N.W.2d 495 (S.D.1985).