## In the Matter of the DISCIPLINE OF James L. JEFFRIES, as an Attorney at Law.

### No. 17435.

Supreme Court of South Dakota.

Argued on Rehearing Feb. 10, 1993.

Decided May 19, 1993.

---

* **SDCL 16–19–36. Attorney's conviction of serious crime to be reported to Supreme Court—Definition of serious crime.** The clerk of any court in this state in which an attorney is convicted of a serious crime shall within ten days of said conviction transmit a certificate thereof to the Supreme Court. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.

R. James Zieser, Disciplinary Bd. of State Bar, Tyndall, for complainant Disciplinary Bd.

Charles B. Kornmann of Richardson, Groseclose, Kornmann and Wyly, Aberdeen, for respondent Jeffries.

MILLER, Chief Justice (on rehearing).

On August 12, 1992, this Court determined James L. Jeffries was not "a fit and proper person to continue to practice law" and we ordered him disbarred. *In re Discipline of Jeffries*, 488 N.W.2d 674, 677 (S.D.1992) (*Jeffries I*). We later granted Jeffries' petition for rehearing. We now determine the judgment of disbarment of Jeffries will be vacated and Jeffries will now be suspended from the practice of law for a period of three years beginning August 12, 1992, the effective date of his disbarment.

## FACTS

A more complete factual background can be found at *Jeffries I*, so only a brief outline will be restated here. Jeffries was admitted to the practice of law in this state in 1984. He was employed until 1987 as a Pennington County Deputy State's Attorney. He prosecuted a great number of criminal cases, including drug cases. In 1990, Jeffries was contacted by law enforcement officers concerning his alleged illegal drug use while a deputy state's at-

torney. He ultimately entered into a plea arrangement with the Attorney General's Office wherein he pled guilty to a Class 2 misdemeanor charge of possession of marijuana.[1]

The Disciplinary Board of the State Bar of South Dakota conducted an investigation. At a hearing before the Board, Jeffries admitted he had possessed and used marijuana hundreds of times since his admission to the Bar and had used and shared cocaine on at least fifteen occasions. The Board found such conduct to be in violation of the criminal statutes of the State of South Dakota (SDCL 22–42–5 makes possession of cocaine a Class 5 felony) and to be in violation of several of the Canons of the Code of Professional Responsibility and the Rules of Professional Conduct. The Board recommended to this Court that Jeffries be suspended from the practice of law for ninety days under various conditions. This Court directed the Board to file a formal accusation. A Referee was appointed and after an evidentiary hearing he recommended that Jeffries be disbarred.

A hearing to determine the appropriate discipline to be imposed was held before this Court on December 4, 1991. The Referee's recommendation, that Jeffries be disbarred, was adopted by a plurality of this Court. *Jeffries I.* Nevertheless, as Jeffries points out in his petition for rehearing, three Justices expressed in that decision a preference for suspension.

We granted rehearing and Jeffries raises four issues which we view as facets of this single issue: What is the appropriate discipline of an attorney who uses illegal drugs while licensed to practice law in this state? Due to the difficulty of this question, made more difficult by the fact that at least some of Jeffries' illegal drug use occurred while he was a public prosecutor actively prosecuting drug cases, we took the extraordinary step of again hearing oral arguments.

## DISCUSSION

■ Many years ago this court noted that an attorney "owes a duty to his pro-

fession and to the court from which he has received his license, as well as to his client." *In re Egan,* 22 S.D. 355, 363, 117 N.W. 874, 878 (1908). Therefore, we "keep in mind that the real and vital issue to be determined in disbarment proceedings is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *In re Discipline of Walker,* 254 N.W.2d 452, 455 (S.D.1977) (citations omitted).

■ "The right to practice law is a privilege granted upon demonstration of satisfactory moral fitness and adequate legal and general learning. To continue this privilege, a lawyer must maintain his fitness and qualifications." *In re Discipline of Strange,* 366 N.W.2d 495, 497 (S.D.1985) (citation omitted).

As officers of this court, attorneys are charged with obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

*In re Discipline of Parker,* 269 N.W.2d 779, 780 (S.D.1978).

■ Disciplinary proceedings are not conducted to punish an attorney. *In re Discipline of Simpson,* 467 N.W.2d 921, 922 (S.D.1991); *In re Discipline of Hendrickson,* 456 N.W.2d 140, 141 (S.D.1990); *Walker,* 254 N.W.2d at 455. Rather, "[t]he purpose of a disciplinary proceeding is ... to protect the public from further wrongdoing on the part of the attorney, and if necessary, to remove from the profession one who has proved himself unfit to be entrusted with the duties and responsibili-

---

**1.** The maximum penalty for a Class 2 misdemeanor charge at that time was "thirty days imprisonment in a county jail or one hundred dollars fine, or both." SDCL 22–6–2(2).

ties of an attorney." *Strange,* 366 N.W.2d at 497 (citations omitted).

Disbarment is a heavy discipline which we do not impose lightly. In past determinations of appropriate disciplines, we have considered the age of the accused, his reputation and current status, *In re Discipline of Dana,* 415 N.W.2d 818, 824 (S.D.1987), "whether the conduct involved dishonesty, fraud, deceit, or misrepresentation; whether the conduct is prejudicial to the administration of justice; whether the conduct adversely reflects upon the attorney's integrity, competency or fitness to practice law," *Parker,* 269 N.W.2d at 780, "the seriousness of the misconduct by the attorney and the likelihood of repeated instances of similar misconduct," *In re Discipline of Kirby,* 336 N.W.2d 378, 380 (S.D.1983), and where drugs are at issue, the "circumstances concerning the extent and frequency of the drug abuse; whether it was used during working hours; whether the accused is addicted to drugs and thus likely to do unethical acts to supply the habit; [and] whether he sold drugs and has quit using drugs." *Strange,* 366 N.W.2d at 497.

We have identified several categories of attorney conduct which warrant disbarment. The first, and historically the most important, is "when it is clear that the protection of society requires such action[.]" *Walker,* 254 N.W.2d at 455. Little is to be gained from an exhaustive dissertation comparing facts and circumstances of behavior which have led to disbarment. Nevertheless, it is appropriate to offer some recent representative situations.

This Court has found it appropriate to disbar attorneys who received *felony convictions for serious crimes,* within the meaning of SDCL 16–19–36, resulting in harm to clients or others. *Hendrickson,* 456 N.W.2d 140 (felony conviction for theft by swindle); *In re Discipline of Janusz,* 439 N.W.2d 559 (S.D.1989) (felony conviction for improper selling of franchises); *In re Discipline of Coacher,* 438 N.W.2d 549 (S.D.1989) (felony conviction of grand theft by embezzlement); *In re Reinstatement of Trygstad,* 435 N.W.2d 723, *aff'd,* 447 N.W.2d 360 (S.D.1989), (noting his felony convictions for conspiracy to distribute cocaine); *In re Discipline of Moeckly,* 401 N.W.2d 537 (S.D.1987) (felony convictions for perjury, importation of cocaine and conspiracy with intent to distribute cocaine); *In re Discipline of Reutter,* 379 N.W.2d 315 (S.D.1985) (felony convictions for aiding and abetting the distribution of cocaine and conspiracy to distribute cocaine) (convictions reversed for retrial at *Reutter v. Solem,* 888 F.2d 578 (8th Cir.1989) followed by plea of guilty to possession of. drug paraphernalia); *In re Discipline of Looby,* 297 N.W.2d 487 (S.D.1980) (felony conviction for making false statements to influence financial institution); *In re Discipline of Weisensee,* 296 N.W.2d 717 (S.D.1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 227 (1981) (felony conviction for attempting to dispose of mortgaged property); *In re Discipline of Voorhees,* 294 N.W.2d 646 (S.D.1980) (felony conviction for making and using false documents to obtain excessive federal payments); *Parker,* 269 N.W.2d 779 (felony convictions for distribution of large quantities of marijuana).

■ Although felony convictions for crimes involving moral turpitude are often entered against an attorney before this court disbars the attorney, it does not follow that a felony conviction leads inexorably to attorney disbarment. In 1984, this Court unanimously suspended from the practice of law for a period of three years an attorney who had pled guilty to possession of cocaine, a "serious crime" within the purview of SDCL 16–19–36. This was his only conviction. The unique procedural posture of that action prevented our consideration of other inappropriate conduct, which we were made aware of through his petition for reinstatement, conduct which included smuggling marijuana into jail, perjury and using cocaine while a practicing attorney. In granting his petition for reinstatement, we observed, however, that "[a]rguably, this court was too lenient in adopting the prior recommendation of the Disciplinary Board … rather than a more severe sanction." *In re Reinstatement of Husby,* 426 N.W.2d 27, 28 (S.D.1988) (footnote omitted).

In 1991, this Court suspended from the practice of law for a period of two years an attorney who admitted failing to obtain a sales tax license or to remit any sales tax to the State from 1965 through 1988. Two Justices dissented, preferring disbarment. Every year of his failure to comply with the tax laws constituted a new offense which developed into the commission of numerous felonies. Nevertheless, he pled guilty to only a single count of engaging in a business without a sales tax license for which he received a suspended imposition of sentence and an order to make restitution to the State. It was not until after he was confronted by the South Dakota Department of Revenue that he began to comply with the sales tax laws. He realized he had to comply with those laws and expressed regret at his failure to do so. No complaints had been filed against the attorney and the public did not need protection against him. *Simpson*, 467 N.W.2d at 921.

■ Just as a felony conviction for a serious crime does not lead inexorably to disbarment, the absence of such a conviction does not preclude disbarment. Thus, we have disbarred an attorney for wrongfully taking client funds though the client was subsequently repaid, *In re Discipline of Pier*, 472 N.W.2d 916 (S.D.1991), and for conduct involving numerous violations of the Canons of the Code of Professional Responsibility, some of which resulted in financial harm to clients. *In re Discipline of Stanton*, 446 N.W.2d 33 (S.D.1989). To summarize, attorney conduct involving moral turpitude and/or dishonesty, fraud, deceit or misrepresentation, which harms, or is likely to harm the public, usually warrants disbarring the attorney involved.

This Court has also said attorney conduct warrants disbarment when "the maintenance of respect for courts and judges" requires such action or when "the respectability of the legal profession itself demands such action." *Walker*, 254 N.W.2d at 455; *Voorhees*, 294 N.W.2d at 649 (Henderson, J., dissenting). The conduct of

Jeffries, who was a deputy prosecutor using illegal drugs at the same time he was actively prosecuting others for their illegal drug activities, comes perilously close to warranting disbarment. That this is so is evidenced by our prior order disbarring Jeffries. Indeed, this Court has on occasion found disbarment to be an appropriate discipline for attorneys involved with illegal drugs.

Thus, to protect the public, we have disbarred an attorney following convictions on conspiracy to import cocaine and conspiracy with intent to distribute cocaine, *Trygstad*, 435 N.W.2d 723; *Moeckly*, 401 N.W.2d 537, following convictions for aiding and abetting the distribution of cocaine and conspiracy to distribute cocaine, *Reutter*, 379 N.W.2d 315 (convictions reversed for retrial at 888 F.2d 578); and following conviction of distribution of large quantities of marijuana. *Parker*, 269 N.W.2d 779.

Unfortunately, this Court's determinations of appropriate disciplines to impose upon attorneys involved with illegal drugs has not been confined to felony importation and distribution activities. Though only irregularly presented with the problem, this Court has had to discipline attorneys whose involvement with illegal drugs has been a result of their personal or "recreational" use of drugs which could have resulted in felony convictions.[2]

An unusual number of attorney "recreational" drug use discipline actions arose in 1985. They did not characterize the "recreational" use of illegal drugs as conduct involving moral turpitude warranting disbarment. Thus we imposed a ninety-day suspension from the practice of law, which we held in abeyance, upon a non-practicing attorney who admitted using cocaine while licensed to practice law. He was granted use immunity, pled guilty to a misdemeanor drug charge and received no convictions for his cocaine use. The public had not been harmed. *In re Discipline of Hopp*, 376 N.W.2d 816 (S.D.1985). Another attorney admitted using cocaine four to six

2. It defies the ability of this Court to understand how an attorney's use of illegal drugs can be "recreational" when its use can lead to such devastating results to the public, the attorney and his family.

times. No convictions resulted and we determined no harm had been done to the public. He received a ninety-day absolute suspension from the practice of law and an additional ninety days which we held in abeyance. *In re Discipline of Willis*, 371 N.W.2d 794 (S.D.1985).

In a trio of related cases, a practicing attorney admitted numerous instances of possession and use of cocaine. No convictions for cocaine use resulted and the public was not found to be harmed. But the integrity of the Bar required a ninety-day absolute suspension from the practice of law and an additional ninety days which we held in abeyance. *Strange*, 366 N.W.2d 495. A second attorney admitted using cocaine at least a dozen times in a single year. No convictions resulted and he received a ninety-day absolute suspension from the practice of law and an additional ninety days which we held in abeyance. *In re Discipline of Kessler*, 366 N.W.2d 499 (S.D.1985). A third attorney admitted using cocaine at least ten times in a single year. Finding no harm to the public and no convictions for his cocaine use, he was also suspended from the practice of law for ninety days with an additional ninety days held in abeyance. *In re Discipline of Brende*, 366 N.W.2d 500 (S.D.1985). With this background, we turn now to a determination of an appropriate discipline for Jeffries' conduct as "each case should be decided upon its own particular set of facts[.]" *Voorhees*, 294 N.W.2d at 649 (Henderson, J., dissenting).

## DECISION

The Disciplinary Board and the Referee conducted hearings and made findings, conclusions and recommendations that Jeffries' conduct should be disciplined. We give careful consideration to their findings as they have had the advantage of seeing and hearing the witnesses. Although their findings are not conclusive upon this Court, if they "are supported by the record, they will not be disturbed[.]" *Dana*, 415 N.W.2d at 822. In this Court's first consideration of an appropriate discipline to impose on Jeffries, we saw no reason to disturb their findings. Nor do we disturb them now.

However, "it does not necessarily follow that we will also adopt [their] recommendations," *Id.; Hopp*, 376 N.W.2d at 818, as "we give no particular deference to [their] recommended sanctions." *Dana*, 415 N.W.2d at 822; *Stanton*, 446 N.W.2d at 35. The Board recommended suspension for ninety days and the Referee recommended disbarment. Nevertheless, "[t]he ultimate decision for discipline of members of the State Bar rests with this court." *Stanton*, 446 N.W.2d at 42; *Dana*, 415 N.W.2d at 822.

■ Jeffries admits he had been "hooked" on drugs. He has been convicted on only one Class 2 misdemeanor charge of possession of marijuana. This conviction is not of the type of "serious crime" for which we have previously ordered an attorney disbarred. "A lawyer who becomes hooked on drugs is one thing. A lawyer who sells drugs for profit is another." *Trygstad*, 435 N.W.2d at 726 (Henderson, J., concurring specially). There is no evidence that the public has been harmed by Jeffries' drug use. Our previous cases have not characterized the "recreational" use of illegal drugs as conduct involving moral turpitude warranting disbarment, though such conduct may indeed be felonious. Although we may be persuaded in the future to change our characterization of attorney "recreational" use of illegal substances, we do not do so now.

It is "an old fundamental rule of law that like cases should be treated alike." *Id.* at 725. Therefore, although Jeffries has, by his illegal drug use as a prosecutor, charged with enforcement of the drug laws of this state, joined those "few lawyers who 'are the scandal of the profession,'" *In re Egan*, 37 S.D. 159, 166, 157 N.W. 310, 312 (1916), our prior Judgment of Disbarment of Jeffries is vacated.

■ Nevertheless, Jeffries' conduct does warrant discipline. To Jeffries' credit, he freely admits his regular illegal drug use while an attorney. This included the use of cocaine on at least fifteen occasions. Jeffries admits he first used marijuana in

1973, while still in high school, and did not stop using illegal drugs until he was investigated. He admitted to the Disciplinary Board that he was chemically dependent. He has been dependent for a considerable length of time although he testified he had ceased using cocaine in late 1987 and marijuana in late 1989. In April, 1990, he voluntarily entered the Hazelden, Minnesota, rehabilitation center to overcome his chemical dependencies, but he did not do so until after he was confronted by law enforcement officials.[3] However, Jeffries states he has been drug and alcohol free since April, 1990, and has since attended AA programs on a regular basis. He is also active in the Lawyers Concerned for Lawyers Committee of the State Bar, assisting members of the Bar with similar chemical dependencies.

Jeffries has committed felonies by his admitted illegal drug use. Jeffries admits his cocaine use was wrong. We find it particularly objectionable that Jeffries' illegal drug use spanned the time during which he was a deputy state's attorney prosecuting others for their illegal drug use. Nevertheless, Jeffries' drug use does not appear to have occurred on the job and there is no evidence that Jeffries' illicit drug use adversely affected his abilities as a prosecutor. (Though in this regard, we note that he asserts he is "thinking more clearly now than before.") In fact, there is extensive testimony that Jeffries has been a properly prepared, good, professional and aggressive lawyer. No complaints appear to have been lodged against him by a client, attorney or judge.

In light of all the evidence, we find Jeffries has, by his conduct, severely tarnished the image and integrity of the Bar. Balancing the aggravating and mitigating circumstances before us, *Simpson*, 467 N.W.2d at 923–24 (Henderson, J., specially

concurring), and considering especially his status as a prosecutor, his misdemeanor conviction, his long-term chemical dependency, his remorse, his apparent success at remaining drug and alcohol free, absence of a concrete harm to the public and his cooperation with law enforcement and the Disciplinary Board, we again determine Jeffries has not demonstrated to this Court that he is a fit and proper person to continue to practice law.

Therefore, pursuant to SDCL 16–19–22, an order will be entered directing that Jeffries be suspended from the practice of law for a period of three years effective August 12, 1992, the date of this Court's prior judgment of disbarment. During the period of Jeffries' suspension from the practice of law, he is directed to (1) continue his chemical dependency after-care programs and regularly submit proof of compliance to the Disciplinary Board and obviously, to refrain entirely from the illicit use of drugs; (2) perform one day of public service per month at the direction of the presiding judge of the judicial circuit wherein he resides; and (3) be available to share and discuss with lawyers and students the (a) choices he made in developing a lifestyle encompassing the use of illegal drugs and (b) the effects of his lifestyle on himself, others and the Bar. That part of our prior judgment which ordered Jeffries to reimburse the State Bar for its itemized allowable expenses remains in effect and will include the itemized allowable expenses for this rehearing.

We emphasize that Jeffries' reinstatement to practice law is not automatic at the expiration of his three-year period of suspension. He must first file a petition for reinstatement, accompanied with a deposit to cover the expected costs of his reinstate-

---

**3.** We encourage attorneys (and law students, since our disciplinary actions reveal that most, if not all, of the attorneys we have disciplined for illegal drug use began, or continued such illegal drug use through college and law school) who are using illegal drugs or abusing alcohol to cease such conduct and where necessary, to seek counselling and rehabilitative assistance *before* their conduct results in a confrontation with law enforcement. Although there were no complaints lodged against Jeffries by clients or the public, in the absence of treatment, it is not difficult to see that had his substance use/abuse continued, harm would have resulted to his clients or the public with the likely result of an even harsher discipline being imposed on Jeffries.

ment proceeding, and then demonstrate to this Court

by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this state and that his resumption of the practice of law within the state will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.

SDCL 16–19–84; *Trygstad,* 435 N.W.2d 723; *Husby,* 426 N.W.2d 27. Only then will we issue an order reinstating Jeffries, thus allowing him to resume the practice of law. SDCL 16–19–83.

Judgment will be entered accordingly.

WUEST, J., concurs.

AMUNDSON, J., concurs in result.

HENDERSON and SABERS, JJ., dissent.

AMUNDSON, Justice (concurring in result).

In my previous writing in this discipline case, *In re Discipline of Jeffries,* 488 N.W.2d 674, 680 (S.D.1992), I attempted to convince this court that disbarment was not the appropriate discipline for this attorney.

I did not and still do not construe the discipline recommended in my previous writing as permissive. The recommendation of a minimum suspension of one year exceeds the discipline imposed by this court in similar cases by approximately 270 days. One year would seem to be a long time for anyone to be restrained from practicing their profession.

I am again placed in the unenviable position of having to select between two disciplines which are neither totally palatable. Jeffries again displayed at the rehearing on this matter the tremendous strides he continues to take in overcoming his addiction. These rehabilitative efforts undertaken by Jeffries were totally disregarded in our prior decision. I have always taken the position that disbarment in this case was askew. At best, the message being sent at

this time is that if you have a problem, seek help for it and follow through with your rehabilitation program, one day at a time, this court will not take those efforts into consideration when deciding on the ultimate discipline.

In conclusion, the discipline being imposed in this case certainly would fall within the definition of what "is stern and not lenient; it is not indulgent but is exacting to the degree that it forewarns young lawyers [or old lawyers] ... of the dangers of usage of a drug such as cocaine." *In re Discipline of Strange,* 366 N.W.2d 495, 497–98 (S.D.1985) (Henderson, J., concurring). Stern, not lenient, and not indulgent has now gone from 90 days to 1080 days. I would have to say that this should send a message to the members of the bar. On the other hand, suspension is certainly more appropriate in this case under the established precedent in drug use cases than is disbarment, and is the reason why I can concur in the discipline provided for by the majority. This is certainly not done with intellectual force but for the purpose of avoiding a perceived injustice.

HENDERSON, Justice (dissenting).

Hereby, I reimpose my entire concurring opinion found *In Matter of Discipline of Jeffries,* 488 N.W.2d 674, 678 (S.D.1992). Thereby, I again vote for disbarment.

During argument before this Court upon rehearing (which I did not vote for), counsel for Jeffries admitted his client was "impaired" when he prosecuted. This type of prosecution is a hurt—an affront—a wrong upon the public.

During argument, Jeffries, in addressing the Court, inter alia, expressed "I was singled out" [for prosecution]. This statement was in reference to other participants, within the framework of the legal profession, using drugs. Such a statement does not equate with remorse or sorrow. Rather, he exhibits a victim's mentality.

Reference is made to: *Matter of Discipline of Hopp,* 376 N.W.2d 816 (S.D.1985); *Matter of Discipline of Willis,* 371 N.W.2d 794 (S.D.1985); *Matter of Discipline of Brende,* 366 N.W.2d 500 (S.D.1985); *Mat-*

*ter of Discipline of Kessler,* 366 N.W.2d 499 (S.D.1985); *Matter of Discipline of Strange,* 366 N.W.2d 495 (S.D.1985). These attorneys were not prosecutors for the State of South Dakota. They were practicing attorneys. Therein lie the gravamen of Jeffries' wrong as contrasted to the above cited cases.

Jeffries would use drugs at night and prosecute by day for the acts he was committing. This was a double standard at its zenith. Such type of conduct poisons the criminal justice system. It destroys the public's confidence in our courts.

This attorney's professional calling was to eliminate the drug culture; instead, he aided it; he was a part of it. Rather than to "ride with the law," as an old cowboy would say, he chose to "ride against it."

*In Matter of Discipline of Hendrickson,* 456 N.W.2d 140, 141 (S.D.1990) we expressed:

> Disbarment is warranted when it is clear that the protection of society requires such action *or* where the maintenance of respect for courts and judges *or* the respectability of the legal profession itself demands such action.

As the United States Supreme Court has held, the prosecutor is "a servant of the law," not an advocate of an ordinary party. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As such, prosecutors are held to a higher standard lest the "special significance to the prosecutor's obligation to serve the cause of justice" be lost. *Arizona v. Youngblood,* 488 U.S. 51, 63, n. 2, 109 S.Ct. 333, 340, 102 L.Ed.2d 281 (1988) (Blackmun, J., dissenting) (quoting *Agurs,* 427 U.S. at 111, 96 S.Ct. at 2401).

Seemingly, if there were ever a case to apply such a statement, it exists here. In my opinion, lest the public view us with disdain, we should disbar Jeffries: For, indeed, the maintenance of respect for the courts and judges demands it; and, so, also, the respectability of the legal profession is at stake when prosecutors corrupt their very essence.

SABERS, Justice (dissenting).

I respectfully dissent.

I support disbarment because:

(1) Jeffries admits to the commission of hundreds of misdemeanors (possession and use of marijuana) and at least fifteen felonies (use and sharing of cocaine) even though his only conviction was for possession of marijuana—a misdemeanor.

(2) The conviction of a serious crime under SDCL 16–19–36 * resulted in disbarment in: *In re Discipline of Hendrickson,* 456 N.W.2d 140 (S.D.1990); *In re Discipline of Janusz,* 439 N.W.2d 559 (S.D.1989); *In re Discipline of Coacher,* 438 N.W.2d 549 (S.D.1989); *In re Discipline of Moeckly,* 401 N.W.2d 537 (S.D.1987); *In re Discipline of Reutter,* 379 N.W.2d 315 (S.D.1985); *In re Discipline of Looby,* 297 N.W.2d 487 (S.D. 1980); and *In re Discipline of Voorhees,* 294 N.W.2d 646 (S.D.1980).

(3) Commission of fifteen felonies and hundreds of misdemeanors is at least as serious as the conviction of a serious crime under SDCL 16–19–36.

(4) Despite the admission of committing fifteen felonies and hundreds of misdemeanors, Jeffries was only charged with a Class 2 misdemeanor. Should an attorney benefit twice from a very favorable plea bargain and sentence? "[T]he image and integrity of the legal profession is damaged every time a court permits an attorney guilty of

---

such serious misconduct to practice law again." *In re Discipline Simpson*, 467 N.W.2d 921, 925 (S.D. 1991) (Sabers, J., dissenting); *see also Simpson*, 467 N.W.2d at 925 (Wuest, J., dissenting).

(5) "The *commission* of "serious crimes" implicates the need to protect the public and the profession." *Hendrickson*, 456 N.W.2d at 141 (emphasis added).

(6) Jeffries' drug use continued while he was a deputy state's attorney. He prosecuted others for crimes he was guilty of himself. Such disregard for the laws of South Dakota must have compromised the integrity of his office. We should follow the referee's recommendation of disbarment and our decision in *Jeffries I.*

(7) I do not agree with the "popular concept" that there are too many lawyers in the United States today. I do agree that there are too many lawyers whose conduct indicates that they place too little value on their right to practice law. The right to practice law must not only be earned, but preserved. The conduct of Jeffries clearly indicates that he placed too little value on his right to practice law. In my view, he has forfeited his right to practice law by his conduct. I would require him to re-earn the right to practice law and I vote for disbarment.

I have reviewed the facts and relevant factors in the majority opinion and compared them with *Jeffries I.* I find no new facts, factors or real change except for the mind and vote of a single Justice.

We should stand firm on our decision in *Jeffries I* and require Jeffries to re-earn the right to practice law.